## VUKOVICH v DE BARTOLO et

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 29, 1935

John A. Willo, Youngstown, and A. M. Henderson, Youngstown, for plaintiff in error.

Barnum, Hammond, Stephens & Hoyt, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

Other testimony corroborative of the testimony of Bertha Cemerick, hereinabove quoted, was given in the case. This, then, is the uncontradicted evidence as to how the accident happened. Upon being directed to "get out", the other children, except the little girl in question, who was injured, ran across the pavement to the southerly side. This little girl did not turn and run, but staring, as the witness says, at the man who was telling her to "get out," and who was waving a stick toward and over her, evidently in great fear, and perhaps thinking that she could better protect herself or more easily avoid injury by watching Batista, walked backwards, facing him, with staring eyes, with her hands uplifted in front of her face, palms outward, in a gesture of anticipated injury, was thus by this conduct of Batista, impelling her by fear, not daring to take her eyes off from him, she stepped back until she reached practically the middle of the south half of this pavement, that an automobile driven by the defendant Sam First, in an easterly direction, ran her down and seriously injured her. It is a remarkable thing that neither First, with a clear view of conditions, could have struck this little girl with an automobile ,without having first noticed her presence and the presence of Batista in the street in front of him. It is further more than passing strange that Batista should be so absorbed in his effort to drive this little girl back that he was oblivious of this approaching automobile until she was struck and crushed beneath the wheels. He knew that this was a much frequented street. It was his duty to apprehend that automobiles might be expected to pass at any time. If he had looked and had seen this truck approaching. evidently not intending to stop, or giving any indication of so doing, it was a wrongful act to drive the little girl into this place of danger. If he did not look, under the environments of the transaction, it was likewise indicative of negligence to drive the girl into a place which must have been known to him to have been dangerous. The children were standing within a few feet of the south side of the machine, where presumably they would have been safe from injury from the machine as it progressed as intended, a few feet further to the west, in the absence of something out of the ordinary falling upon them or otherwise coming into contact with them. They were also at about the center of the street and would not be in the way of passing vehicles, so the result was that this little girl was chased from a position of comparative safety into one of great danger by the result of the conduct of Batista.

Counsel for the defendant in error, Batista, propound three propositions, which are elaborated upon at considerable length in argument, seeking to establish the proposition that Batista was not guilty of negligence in doing what he did. The first proposition is: "First, the evidence clearly establishes the fact that plaintiff, while standing within a few feet of the concrete mixer of the defendant, which was about to be moved, was in a position of great danger." It may be assumed that the child, in standing beside the machine, as hereinbefore indicated, was in a place of some danger, not particularly from anything which might happen in the ordinary course of events, and in the usual prosecution of the work, but nevertheless, it was a place of some danger. practically justifying an anticipation that something unexpected might happen, and that the presence of the children at that time and on former occasions was to a considerable extent a nuisance in the operation of this work, but it is not conceded that the girl was in a position of great danger, justifying, or attempt-

ing to justify, as is the purpose of this statement, the conduct of Batista in removing her from that place.

**Second.** "It is said the defendant, DeBartolo, was under legal obligation to effectually warn the plaintiff from that place of danger, and in doing so only did that which the law required him to do."

**Third.** "It is said that there was nothing unreasonable, wanton or wilful in the conduct of defendant's servant in warning plaintiff away from her position of danger." Presumably the second statement above quoted is correct, that it was the legal obligation of the defendant DeBartolo to warn this little girl away from the position of danger, in which she was immediately preceding the accident, but we do not accept or endorse the balance of the statement, made as follows:

"* * * and in so doing did only that which the law required him to do."

The law did not require or justify Batista in removing this little girl from her position beside the machine to subject her to a much greater danger and to conditions which crippled this girl and nearly caused her to lose her life. There was no occasion for haste. There was no immediate necessity for moving the machine, if the safety of someone was involved in so doing. Numerous things can be imagined which might easily have been accomplished and have promoted the absolute safety of the child. This little girl evidently did not appreciate the danger of the position she was in, but she did know enough to fear the physical demonstration of Batista in his attempt to chase her away. The evidence indicates that counsel was justified in suggesting to the effect that she was paralyzed by fear. It would have been a very easy matter for Batista, in attempting to promote the safety of the girl, to have picked her up in his arms and carried her to the curb or upon the sidewalk, where she would have been safe, but the evidence is to the effect that by waving a stick, the size of which has not been given in the testimony, so far as observed, and crying to her to "get out," continually approaching upon her with these hostile demonstrations, impelled her into the traffic, which he had every reason to believe might be impending and of great danger to the child. Whatever she may have known about her duty to watch for traffic in the street was not available to her by reason of the intimidation of Batista, causing her to keep her eyes upon him and lose sight of the other conditions. Neither can we accept the declaration above quoted, that "there was nothing unreasonable, wanton or wilful in the conduct of the defendant's servant in warning plaintiff away from her position of danger." It is sufficient for the purpose of this action if the conduct was negligent. There can be no question under the evidence but what the action of Batista indicated a proximate cause of the accident. It may be that the conduct was not wilful with a purpose and design to cause an injury to this child, but his conduct did indicate a wanton disregard for the safety and the life and limb of this little girl. There is no suggestion that he was not an intelligent man, in the full possession of his faculties, experienced in this work, appreciating the dangers and conditions involved. It is hard to understand his conduct otherwise than that he was in such a rage, because of the presence and annoyance of the children, that he gave no heed as to what the result might be of his conduct.

It is urged by counsel for the defendant DeBartolo that his conduct is not actionable because of the participation of the other defendant, Sam First, therein, and because, as is said, had it not been for the fact that Sam First came along with his auto truck at the time when the girl had been driven back into the street, she would have received no injury. By this same token, if Sam First comes into court to defend his conduct he may by like token say that the approach and passing of his automobile would have caused no damage if the defendant's servant, Batista, had not driven the girl out in front of his automobile, a situation of, if recognized, each defendant passing the buck, with the result that as between the two the girl would lose out. We do not think that any such contention is well founded.

A large number of authorities have been cited and quoted upon each side of this case which we do not now consider it necessary to mention or quote. However, attention is directed to the case of **The Baker-Evans Ice Cream Company v Tedesco, an Infant, 114 Oh St, 170.** This case is strongly relied upon by counsel for the defendant DeBartolo as being practically like the case under consideration, and that the similarity is so great that the finding in the case of The Baker-Evans Ice Cream Company v Tedesco, in which the plaintiff in error was exonerated from liability, requires a like determination of the case under con-

sideration. The syllabus in this case reads as follows:

"It is not actionable negligence for the driver of an auto truck, standing at the curb of a city street, to call 'Hey, there,' as a warning to children congregated about such truck for the purpose of procuring pieces of ice which had dropped therefrom into the street, where in addition to such act of claimed negligence it is averred that as a result of such warning, and similar warnings on previous occasions, the plaintiff, a child five years of age, and other children with her near the truck, were put in fear of the driver and upon his approach would run away from the truck, although upon the occasion in question the plaintiff in crossing the street toward her home was struck by a passing automobile. The doctrine of attractive nuisance has no application under the facts here presented."

In this case the driver of the delivery truck had been annoyed by children congregating about his truck when he parked for the purpose of looking after the needs of his customers, gathering about the truck and picking up the fragments of ice that had fallen therefrom. This condition had existed for a considerable time. The driver, by somewhat vigorous language had criticized them for so doing and driven them away from the truck. At the time in question the driver, returning to the truck, saw the children gathered about it and cried out "Hey, there," as a warning. The children fled, but the plaintiff, who was five years of age, in running across the street, was struck by an automobile and injured, and the Supreme Court held that the employer of the driver of the truck was not liable for such conduct. The Supreme Court in this case evidently did not attempt to establish a rule applicable to negligence cases of even similar character, but held that the facts in that case, as stated in the petition, to which a demurrer was sustained, did not constitute a cause of action. If the conditions and circumstances involved in the Ice Cream case were the same as in the case under consideration, then presumably it might be considered a determinative decision. In the Ice Cream case, as before stated, the children were gathered about the truck. The driver, returning thereto, noticing the children, called "Hey, there," and the children fled. They were not pursued. They chose their own directions. The little girl, of her own volition, attempted to cross the street and an

unfortunate accident resulted. She did not so go by reason of any direction or inducement of the driver. There was nothing to indicate but that there was any attempt on the part of the driver to do more than prevent the congregating of the children about his truck. If, in the instant case, Batista had simply used similar language, or indulged in similar conduct, to that of the ice cream truck driver, he would simply have indicated to the child that she should not stay where she was then standing, but she should get away from that location, and if, in attempting to do so, and she was struck by a motor vehicle, the condition would be entirely different, but, as has hereinbefore been stated, Batista, waiving a stick, advancing upon her, crying out to her to get out, pursuing her so closely that she evidently did not dare to turn her back to him, with the result that she was deliberately backed by this man to the place where the accident occurred, he, either having seen or should have seen the approaching automobile, which collided with her, this, we think, presents a situation so unlike the Ice Cream case that it should not be used as an authority in the case under consideration.

The case of **Ziehm v Vale, 98 Oh St, 306,** has also been cited. The syllabus in this case reads as follows:

"1. Where the owner of an automobile, upon returning to his car, finds an infant, four and a half years of age, thereon, and twice drives the infant from the car, the owner is not thereby absolved from further duty toward such infant. Under such circumstances, when the child still remains in close proximity to the car, the driver is required to exercise reasonable care to avoid injury to the child."

In this case it was held that it was the active duty of the driver of the car not to drive away under conditions which might have suggested to him that the infant was back upon the running board or so near the car as to make the moving of it dangerous to the child. The conduct of Batista would seem to be much more aggravated than that of the driver of the car in the case just cited, for the reason that Batista coerced the child, in effect, into a known place of danger.

The result of the consideration of this case by this court is that in our opinion the conduct of Batista indicated actionable negligence and a consequent right of action which at least involved questions of fact

which necessitate the submission of the case to a jury for its consideration. Prejudicial error occurred in the directing of a verdict in favor of the defendant. The judgment of the Court of Common Pleas is therefore reversed.

Judgment reversed.

CARTER and NICHOLS, JJ, concur.